UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JAMIELLE JONES, | ) Civil No. 3:21-cv-00074 |
| Plaintiff, | ) |
| v. | ) |
| | ) COMPLAINT and |
| WELLS FARGO BANK, N.A., | ) DEMAND FOR JURY TRIAL |
| Defendant. | ) |

Plaintiff, Jamielle Jones ("Jones" or "Plaintiff"), by and through counsel, brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) against Defendant Wells Fargo, N.A., ("WFB" or "Defendant").

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings her FLSA claims pursuant to 29 U.S.C. § 216(b) and she seeks to recover unpaid overtime compensation and statutory penalties during the three-year period preceding the filing of this Complaint. Plaintiff also brings a claim for retaliation under the FLSA. Specifically, Defendant refused Plaintiff employment benefits because Plaintiff engaged in protected activity by participating in Defendant's investigation of FLSA violations involving Plaintiff's direct supervisor and requesting to be paid for unpaid overtime.

## THE PARTIES

2. Plaintiff is an adult individual who is a resident of Charlotte, North Carolina.

3. WFB is a national banking association chartered under the laws of the United States with a substantial business presence in Charlotte, North Carolina.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 et. seq.

5. This Court has personal jurisdiction because Defendant conducts business in Mecklenburg County, North Carolina, which is located within this judicial district.

6. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina.

## COVERAGE ALLEGATIONS

7. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

8. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

9. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

10. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

11. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

## PLAINTIFF'S FACTUAL ALLEGATIONS

12. WFB is an enterprise engaged in the business of banking, insurance, investments, mortgage, and consumer and commercial finance.

13. At all relevant times, Plaintiff was a nonexempt employee of Defendant within the meaning of the FLSA and eligible for overtime compensation for all work performed in excess of 40 hours in a workweek.

14. At all relevant times, Plaintiff met or exceeded Defendant's legitimate employment expectations.

15. Defendant employed Plaintiff during the FLSA's statutory period preceding filing this complaint.

16. On or about May 1, 2012, Plaintiff began working for Defendant as a Quality Assurance Analyst. Plaintiff was paid on an hourly basis and her hourly wage ranged from $15 per hour to $20 per hour.

17. As a Quality Assurance Analyst, Plaintiff reviews investigation of fraud conducted by WFB's Fraud Department to ensure that proper procedures were followed, both in how the investigation was conducted, the result reached, and the manner in which the result is communicated.

18. WFB utilizes a timekeeping system called "Robi" to track the hours worked. With this system, when Plaintiff opens an assigned case, Robi automatically starts a timer. When

3

Plaintiff is finished reviewing the case and/or completes the case, Robi automatically stops the timer.

19. At all times relevant, WFB management employees had access to Plaintiff's timecard created by Robi and the ability to change Plaintiff's work hours.

20. Starting in or about early 2017, Plaintiff asked her direct supervisor, Edward Booth ("Booth"), for additional work throughout the week. Booth assigned Plaintiff more work. Also, Booth assigned work to Plaintiff even when she did not request additional work.

21. Plaintiff began working on average ten to twelve (10-12) hours per day and worked in excess of 40 hours in a workweek on one or more weeks during the three-year period preceding the filing of this Complaint. As a result of the increase in her hours worked, Plaintiff would ask Booth if she would be compensated for all of the hours she worked in the week. Booth told Plaintiff he would update her on whether she would be approved for overtime for that pay period when she submitted her timecard for his approval at the end of the week. Booth would sometimes tell Plaintiff she was not approved to receive overtime compensation for the pay period after Plaintiff had submitted her timecard.

22. In or about June or July 2018, Booth's manager Lynn Duber ("Duber") conducted an audit of Plaintiff's hours. Duber compared the hours recorded by Robi and the hours approved by Booth. Duber instructed Plaintiff she was required to complete a spreadsheet showing what days and hours she worked and submit any additional paperwork within twenty-four (24) hours evidencing how many hours she worked on a daily basis going back to late 2017.

23. Plaintiff gathered and submitted the weekly timecards she provided Booth and forwarded this information to Duber.

24. Following the audit, and upon information and belief, an allegation of Booth's FLSA violations was submitted to WFB's Allegation Department. Plaintiff was interviewed by Duber, Booth, a representative from WFB's Human Resources Department, and another individual (name unknown) about the unpaid hours Plaintiff worked.

25. Plaintiff cooperated with Duber's investigation of WFB's violation of the FLSA and WFB's Allegation Department's investigation of Booth. Plaintiff provided information regarding Booth's unlawful conduct during both investigations.

26. Booth knew that Plaintiff cooperated with WFB's investigations of his role in the FLSA violations involving Plaintiff.

27. Following the investigations, Plaintiff performed her job duties with the same level of attention and detail as she did before the investigations.

28. As Plaintiff's supervisor, Booth conducted assessments of Plaintiff's work, called a "second level." When conducting the second level, Booth was supposed to randomly select cases to review. If there were any discrepancies in Plaintiff's work, Booth assigned Plaintiff an "error."

29. From January to July 2018, Plaintiff averaged two to three (2-3) errors per month.

30. In August and September 2018, Booth increased the number of Plaintiff's cases for review and scrutinized her work for errors. In August and September 2018, Booth assigned Plaintiff seven to nine (7-9) errors each month.

31. At the end of September 2018, Booth told Plaintiff she needed to "have a couple good months" or she would be issued a disciplinary write-up. During the first half of October 2018, Booth assigned Plaintiff two or three errors. Booth then issued Plaintiff a disciplinary write-up. Booth additionally told Plaintiff that her job was at risk.

5

32. On or about October 5, 2018, WFB sent Plaintiff a letter stating, "that the information [she] provided in response to the survey is a key component of the calculation used by WFB to establish accurate back pay, including overtime or premium pay." Attached to the letter was a "Payment Advice and Acknowledgment" ("Acknowledgment"). WFB issued Plaintiff a check for $3,816.47, to compensate Plaintiff for "[t]ime in excess of those previously reported, including any resulting overtime" for the period of October 1, 2017 to May 5, 2018. Plaintiff signed the Acknowledgment on October 23, 2018.

33. Following the investigations, WFB compensated Plaintiff for the unpaid overtime hours she worked during the period October 1, 2017 through approximately May 5, 2018.

34. Following the investigations, WFB did not compensate Plaintiff for liquidated damages resulting from WFB's violation of the FLSA.

35. At the end of 2018, WFB split up Plaintiff's team and assigned Plaintiff a new direct supervisor, Rachel Ward ("Ward"). Because Ward was new to the position, Booth remained responsible for determining Plaintiff's eligibility for an annual raise. Booth denied Plaintiff a raise in February 2018. Booth told Plaintiff she would not receive a raise because of the investigations into Plaintiff's hours worked. After speaking with Booth, Plaintiff spoke with Duber about why Booth denied her raise. Duber admitted that Booth attempted to cover up the hours that Plaintiff worked. Before 2018, WFB awarded Plaintiff with annual raises all previous years she worked for WFB. Since 2018, WFB has awarded Plaintiff received a raise every year.

36. WFB failed to timely pay Plaintiff one and one-half times her regular rate of pay for all hours she worked in excess of forty hours a week during the period October 2017 through May 2018.

37. WFB knew Plaintiff performed overtime work during the period October 2017 through May 2018 because it tracked all time worked through its Robi system and because Booth assigned and monitored the work Plaintiff performed.

38. WFB knew Plaintiff performed overtime work without pay during the period October 2017 through May 2018 because Booth manipulated WFB's timekeeping system to reduce the number of overtime hours that Plaintiff worked, thereby denying Plaintiff the timely payment of overtime compensation she earned.

39. Since 2018, Plaintiff engaged in activity protected under the FLSA by repeatedly requesting that Booth arrange for Plaintiff to be paid for the additional overtime hours she worked during the period October 2017 through May 2018. Plaintiff also engaged in activity protected by the FLSA by cooperating with WFB's investigations of the unpaid overtime Plaintiff worked under Booth's direction and control.

40. WFB, through Booth, retaliated against Plaintiff for engaging in activity protected by the FLSA by: (1) scrutinizing her work with the intent of issuing errors; (2) threatening her with job loss and disciplinary actions; and (3) denying her a raise in 2018.

41. Plaintiff suffered harm as a result of WFB's retaliatory actions.

42. WFB's failure to timely pay Plaintiff the required FLSA overtime premium was willful because Booth intentionally manipulated Plaintiff's overtime hours to reduce the amount of overtime WFB paid Plaintiff.

43. WFB is liable to Plaintiff for statutory liquidated damages, reasonable attorney's fees, and litigation costs because it failed to timely pay Plaintiff for all overtime hours she worked during the FLSA's statutory time period.

44. WFB's retaliatory threats of disciplinary action, threats of termination of employment, the scrutiny of her work compared to other similarly situated employees, and the refusal to award Plaintiff a raise in February 2018 were willful because Booth intentionally punished Plaintiff for cooperating in WFB's investigations of the conduct complained of in this Complaint.

## Count I - Violation of FLSA – Overtime

45. Plaintiff incorporates by reference paragraph 1-44 of her Complaint.

46. Defendant's violation of the FLSA arises from its failure to timely pay all overtime wages earned by Plaintiff.

47. Defendant violated the FLSA by failing to timely pay Plaintiff an overtime premium rate of pay for all hours worked in excess of forty in a workweek.

48. Defendant violated the FLSA by failing to comply with the timekeeping and recordkeeping provisions of the FLSA.

49. Defendant's violation of the FLSA was willful.

## Count II - Violation of FLSA – Retaliation

50. Plaintiff incorporates by reference paragraph 1-49 of her Complaint.

51. WFB violated the provisions of 29 U.S.C. §215(a)(3) by retaliating against Plaintiff for engaging in activity protected by the FLSA. Examples of retaliatory conduct: (1) Booth assigning Plaintiff unwarranted errors; (2) Booth threatening to discipline Plaintiff and terminate her employment; and (3) Booth denying or causing the denial of Plaintiff's February 2018 raise.

52. WFB's violation of the FLSA was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for liquidated damages equal in amount to the amount of overtime WFB failed to timely pay Plaintiff during the FLSA's 3-year statutory period.;

b) An Order pursuant to Section 15(a)(3) of the FLSA finding Defendant liable for unlawful retaliation and awarding lost wages, liquidated damages, and all other available relief.

c) An Order awarding the costs of this action;

d) An Order awarding reasonable attorneys' fees;

e) A Declaration and finding by the Court that Defendant willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

f) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

g) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

/s/ Philip J. Gibbons Jr.
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LEIS, PLLC**
14045 Ballantyne Corporate Place, Ste 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
E-Mail: phil@gibbonsleis.com
corey@gibbonsleis.com